## NEW YORK MERCHANDISE CO., INC. v. UNITED STATES

No. 5858.—Invoice dated Yokohama, Japan, September 21, 1939.
Entered at New York, N. Y., October 24, 1939.
Entry No. 742324.

Second Division, Appellate Term

(Decided April 27, 1943)

*Siegel & Mandell* (*Sidney Mandell* of counsel) for the appellant.
*Paul P. Rao*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the appellee.

Before TILSON, KINCHELOE, and KEEFE, Judges

TILSON, Judge: This is an application for review of the decision o the trial court in which it was held that the proper basis of appraisement was United States value, and that such value was $18.517 per thousand pieces. The merchandise was invoiced and entered at 2.80 yen per 100 pieces.

At the trial of the case before the single judge counsel for the respective parties agreed that there was neither a foreign value nor an export value for the merchandise; that if the United States value is found to be the proper basis of appraisement, then the value claimed by the collector, to wit, $18.517 per thousand pieces, is the United States value, and that if the cost of production, as claimed by the appellant, is found to be the proper basis of appraisement, then the importer's entered value of 2.80 yen per 100 pieces represents such cost of production for the merchandise herein. This left for decision by the trial court only the question as to which of the two values was the proper basis of appraisement of the merchandise herein.

In determining whether or not there is a United States value for the merchandise herein we should be guided by the decisions of our appellate court in *United States* v. *Sheldon*, 23 C. C. P. A. 245, *Stern Hat Co.* v. *United States*, 26 C. C. P. A. 410, and *United States* v. *Collin & Gissel*, 29 C. C. P. A. 96.

In the *Sheldon* case, *supra*, our appellate court, referring to United States value, said:

* * *. The said value is the price at which such or similar imported merchandise is *freely offered for sale*, packed, in the principal market of the United States, to all purchasers, *at the time of exportation* of the merchandise which is being valued. This could, of course, be established only by such or similar goods which had been previously imported and were being freely offered for sale *at the time of export* of the goods being valued. [Last italics ours.]

The above rule was restated with approval in the *Stern Hat Co.* case, *supra*.

In the *Collin & Gissel* case, *supra*, our appellate court held as follows:

\* \* \*. No imported machine was in the United States available to be offered for sale by the importer at $5,500, or at any other price, on July 11, 1934, the date of exportation of the involved machine, nor at any time near that date. The statute defining United States value explicitly states, "The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale \* \* \* in the principal market of the United States to all purchasers, *at the time of exportation* of the imported merchandise \* \* \*," and it was definitely construed by us in the *Sheldon & Co.* case, *supra*, in the manner already stated. Clearly, had the importation here involved been a first importation of the particular type of merchandise at issue no United States value could be determined under the statutory definition which Congress adopted and, there being no prototype machine in the United States at or near the date of exportation of the involved machine available for offer, a fundamental element of United States value, as defined by the Statute, was lacking. Upon the facts shown, in our opinion, no legal distinction can be drawn between the importation involved and a case of first importation. [Italics ours.]

We here quote the following from the decision of the trial court:

\* \* \*. The electric-light bulbs under consideration in the present case are handled as a standard item with the importer herein. The importer tries to maintain a stock of these articles throughout the season in which they are bought and sold. They are items which are always on display at the importer's premises. It is fair to assume from the record herein that the only reason prototype merchandise was not offered or sold at the time of exportation of the shipment in question was because the foreign exporter was delinquent on shipments on orders previously placed. Certainly such a condition cannot constitute a basis for the absence of a United States value, as contemplated by the statute.

In our opinion the above-quoted holding of the trial court does not square with the rule laid down by our appellate court in the cases hereinbefore cited with reference to United States value. As we understand the rule it is not material whether the importer handles the merchandise as a standard item; it is not material whether the importer tries to maintain a stock of these items throughout the season in which they are bought and sold, and it is not material whether "They are items which are always on display at the importer's premises." Nor is the rule concerned with the reason why prototype merchandise was not offered or sold at the time of exportation of the imported merchandise, or whether the exporter was or was not delinquent on shipments on orders previously placed.

Section 402 (c) of the act of 1930, reads as follows:

(e) UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, *at the time of exportation of the imported merchandise*, in the usual wholesale quantities and in the ordinary course of trade, with

allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods. [Italics ours.]

Neither in section 402 (e) of the act of 1930, nor in the rule laid down by our appellate court, quoted above, are there any requirements that the merchandise must be a standard item with the importer; that the importer must try to maintain a stock of the articles throughout the season in which they are bought and sold; that the items must always be on display at the importer's premises, and that the exporter cannot be delinquent on shipments on orders of prototype merchandise previously placed before there can be a United States value for imported merchandise, or that a fulfillment of the above-stated requirements alone would constitute a United States value for imported merchandise.

In said section 402 (e) the Congress has clearly defined United States value, and it is for us to accept and follow said definition rather than to try to avoid it or attempt to write amendments to the same. It is clear from a reading of said section that the trial court was in error in holding "Certainly, such a condition cannot constitute a basis for the absence of a United States value, as contemplated by the statute."

The record shows that the involved merchandise was exported on September 21, 1939, and that on or about that date the importer herein had not made any sale of such or similar merchandise previously imported; that on or about said date the importer did not offer for sale in any manner such or similar imported merchandise, and that on or about said date the importer did not have for sale any such or similar imported merchandise.

The only witness who testified stated that New York, N. Y., was the principal market for the sale of merchandise such as or similar to the imported merchandise. After qualifying as being thoroughly familiar with the lamp trade in New York City the witness also testified that there were other shunt filament lamps offered for sale on the market here by other importing houses, but that said lamps were of a different construction and that these lamps were sold for from $7 to $8 per thousand pieces less than the imported merchandise.

The record shows, however, that on September 21, 1939, the importer herein had in his warehouse 10,000 red lamps which had been previously imported. These were packed and reshipped to the warehouse, because red alone has no value. "You have to have five colors"; that on or about September 21, 1939, the importer herein

did not have available for sale or to be offered for sale any imported lamps such as or similar to those in this case.

The witness further stated "In the first place you cannot sell red alone"; those red lamps were on hand "Because we were waiting for the other colors to come in to make good deliveries against other orders we had on hand"; that this case of red lamps was not offered for sale and was not available for sale on or about September 21, 1939; that if a man had offered him five cents more per lamp for the 10,000 red lamps than the price at which they were already committed, he would not and could not have sold them to him, because they had already been committed against orders previously sold totaling 883,000 lamps.

It will thus be seen that there was no such or similar imported merchandise to that here involved freely offered for sale, packed ready for delivery, in the principal markets of the United States to all purchasers, *at the time of exportation* of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade.

This being true, there can, therefore, be no United States value for the imported merchandise. Therefore, accepting the stipulation of counsel, hereinbefore set out, we find the proper dutiable value of the imported merchandise covered by this appeal to be 2.80 yen per 100 pieces, on the basis of cost of production as defined in section 402 (f) of the act of 1930. The judgment of the trial court is therefore reversed.

After a careful examination and consideration of the record we find as a fact:

1. That the imported merchandise consists of electric-light bulbs exported from Japan on September 21, 1939.

2. That on said date no such or similar previously imported merchandise was being freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers in the usual wholesale quantities and in the ordinary course of trade.

3. That counsel have agreed that there is no foreign or export value for the instant merchandise, and that if United States value is found to be the proper basis of appraisement that value is $18.517 per 1,000 pieces, and that if cost of production is found to be the proper basis of appraisement the value is 2.80 yen per 100 pieces.

4. That there is no United States value for the instant merchandise, and that the proper basis of appraisement is the cost of production, and on that basis the value of the merchandise is 2.80 yen per 100 pieces.

As matter of law, we, therefore, reverse the judgment of the trial court, and hold the proper dutiable value of the merchandise to be as set out in finding of fact No. 4. Judgment will be rendered accordingly.